## Case No. 14,461.

### UNITED STATES v. The ANTHONY MANGIN.

[2 Pet. Adm. 452.] [2]

District Court. D. Pennsylvania. 1802.

FORFEITURE—SHIPPING—ILLEGAL REGISTRY—INNOCENT PURCHASER.

The ship Anthony Mangin had been registered as an American vessel. when she belonged in part to a foreigner. She was afterwards sold for a valuable consideration to a person ignorant

[1] [Reported by Hon. Samuel Blatchford, District Judge, and here reprinted by permission.]
[2] [Reported by Richard Peters, Jr., Esq.]

of the fraud which had been committed, and was afterwards libelled as forfeited to the United States.

[Cited in U. S v. The Laurel, Case No. 15,-569.]

PETERS, District Judge. The proceeding being in rem, all the world become parties to the sentence, as far as the right of property is involved; and of course all persons in any wise interested in the property in question, are admissible to claim and defend their interests. The libel states the cause of action with all the averments necessary to support the affirmative allegation that a forfeiture has accrued.[2] The only claimant intervening in this cause is T. W. Norman, who alleges himself to be a bona fide purchaser for a valuable consideration, ignorant of any cause of forfeiture existing at the time of the purchase; and under such purchase, i. e. bona fide and for a valuable consideration claiming the property as exonerated from the cause of forfeiture alleged, even if the facts stated to sustain the same be true, which he in no wise admits. On these proceedings several questions of law have been raised and argued by the counsel; and as the great point does not appear to have ever received either in this country or in Great Britain any direct judicial determination, I have with great diligence examined into the question, which from the breaking of the cause, I saw must necessarily be involved in the determination.

The opinion which I am now to give as the result of more than usual investigation, is delivered with the diffidence which will ever attend the determination of an inferior court upon a new, great and important legal question, and which will probably receive, as it ought, the ultimate judgment of the supreme court. It is necessary to keep in different views the questions of fact in issue, the questions of law arising from these facts, and the parties between whom they arise. It is to be distinctly remembered, that A. Brown whose wilful perjury is alleged to sustain the forfeiture sued for, is no party to the suit; neither are his assignees in any shape parties to this suit to be directly affected by the judgment. Every consideration, therefore, which would be in support of a prosecution against the actual offender, to recover the penalty of his wilful crime, or which might be alleged against those who stand in his situation as privies in law quoad the forfeiture must be laid out of the case.

The only parties to this suit are the United States and the informant as libellants. and T. W. Norman as claimant of the ship. And I think it peculiarly necessary to confine my opinion to the state of facts, and questions of law, applying to the parties in court, because it is not necessary for me to decide whether the assignees of A. Brown are clothed with any of the essential characters of a fair pur-

chaser, or have, so far as relates to the property, any privilege or exemption which Brown himself would not have had, and the question de bona fide emptoris, does arise directly upon Captain Norman's claim. To that I shall, therefore, immediately proceed. No seizure was made or libel filed against the ship until after Brown's bankruptcy, and a sale by his assignees to the claimant, who is admitted to be an innocent purchaser for a valuable consideration. Nor until after he had obtained a new register in his own name upon that purchase.

It is argued by the libellants' counsel that Brown was not competent to pass any property to his assignees, nor they to any purchaser under them, as the forfeiture relates back to vest the property from the time of the false oath; and that the libellants' claim is therefore paramount to that of the claimant. The defendant's counsel argue in support of his claim, that the relation back to the time of the offence is never admitted to overreach rights intermediately acquired by third persons.

In commenting on the case from 1 Durn. & E. [Term R.] 252, when the argument was first opened, Mr. Martin pressed very strongly the dictum of Lord Kenyon, that if the relation back to the time of an offence, was admitted as to the property, it would in every case equally relate as to the profits intermediately acquired. If the reason assigned was true, it certainly furnished one of the strongest cases for applying the argument, ab inconvenienti, and as such I was forcibly struck with it when mentioned. The manner in which Lord Kenyon is reported to have made this observation, plainly shews it to have been the declaration of a sudden impression; and which, though correct as applied to some special cases, is not so in the latitude reported, either at common law, the civil law, or in equity, supported by policy. 3 Bac. Abr. 272; Co. Litt. 390b, 118a. First. At common law, even as to the guilty party, no attainder whatsoever has relation as to the mesne profits of lands, but only from the time of the attainder. Second. By the civil law, and the rules of equity adopted from that code, a subsequent possessor is not only in a worse situation than those from whom he derives his possession, but even in cases where the original possessor might be bound to restore profits, a bona fide possessor is exempt from any obligation to restore such profits, as in the case of a bona fide purchaser. "Bona fide emptor, non dubie percipiendo fructus etiam ex re aliena, interim suos faciat, non tantum eos qui ex diligentia, et opera ejus proveniunt sed omnes, quia quod ad fructum attinet loco domini est." Third. It would not be equitable or just, in the abstract, to permit a legal owner to lay by to avail himself of the ignorance of an innocent holder; and the same considerations of policy, which in England permits the offender and his family to enjoy the profits of

---

[2] See note at end of case.

lands forfeited for treason, which is a strong and acknowledged case of relation to the offence, lest land should be uncultivated, and the public interest thereby suffer, applies conclusively to every case where it may be doubtful whether the relation is to the offence, or only to the time of the conviction. 2 Inst. 48; Hardr. 87; 4 Com. Dig. "Forfeiture." B. 4.

As this reason against relation does not appear to have the force it carried at first view, we must have recourse, first, to the principles of decisions in analogous cases, in their application always having regard, as was justly argued by Mr. Harper (on the motion to produce Brown's examination before the commissioners) that a relation back shall never be permitted to injure the rights of third persons, nor to protect or favor wrong: and secondly, to the statute under which the forfeiture is claimed in this case. The adjudged cases on this subject are six classes of offences, which incur a forfeiture of real estate (2 Brown, Ch. 267), and seventeen which produce a forfeiture of personal property (Id. 421). In this numerous classification the principle which governs each description of cases does not materially differ. I have, therefore, only selected the cases of, and attainder of crimes, as illustrative of these cases; second, waived goods; third, relation of executions at common law (8 Coke, 170a; 2 Bac. Abr. p. 318), and since the statute of Charles; and, fourth, as involving the general doctrine of this case, and to explain the case cited by Mr. Harper (Roberts v. Wetherall, 5 Mod. 193, Salk. 223; 2 Bac. Abr. 318), from a case of villenage which governed that decision.

First. Attainder or conviction of crimes and outlawry. Of this description there are two classes, which are adjudged to have relation to the time of the offence committed, and over-reach all intermediate alienations, treason and felo de se. The case of treason in which the forfeiture relates, as to land, to the time of the offence committed, depend upon feudal principles; as the land could not be alienated by the tenant voluntarily, it would be preposterous to admit that to be done through the medium of a crime, which could not be done by a lawful act; and the power to sell introduced by subsequent statutes, is considered as applying only to lawful alienations. 5 Bac. Abr. 228; Hale, P. C. 261, 262. The reason assigned in some books, that it shall relate to the offence, because "the indictment contains the year and day when it was done," is by no means true or satisfactory, since that would apply equally to personal property, which the same books admit is only affected from the time of the conviction (3 Bac. Abr. 271; Plowd. 488; 8 Coke, 170); and the time charged is traversable even in the case of land by the third persons claiming an interest therein (Hale, P. C. 264, 270; 3 Inst. 230). It is a proposition universally true, that the forfeiture upon an attainder for treason, relates but to the conviction, as to chattels: unless the case of the offender killed in resisting, or flight, form an exception, which may well be doubted. 3 Bac. Abr. 271; Perk. § 29. Indeed, says Lord Coke (8 Coke, 171), it hath always been holden that any one indicted or appealed of treason or felony, may bona fide, sell any of his chattels, real or personal. Jones v. Ashurt, Skin. 357; 4 Com. Dig. "Forfeiture," B. 4; 2 Inst. 48. In the case of a felo de se, it is stated, that the forfeiture has relation to the time of the mortal wound given, so that all intermediate alienations are avoided. 3 Bac. Abr. 272. This is the only case I have ever discovered in which the doctrine of relation has been so far extended. If the principle of that determination is sound, and it is applicable to other cases, it is a drag-net indeed. It may perhaps, most correctly be considered as a cause sui generis, and neither for the reasons which are assigned to maintain it, nor the doctrine it supports, applicable to other cases. Those who are curious on this subject will be amused with the argument of Chief Justice Dyer on the drowning of Sir J. Hales, and will probably be as much convinced by the reasoning of the chief justice (Plowd. 262), as by the logic of the gravedigger in Hamlet, to prove that the drowning of Ophelia was se defendendo. Outlawry subjects the party to forfeitures which, as are well known, depend upon the nature of the suit upon which they are prosecuted. Without enquiring when an office is necessary or may be dispensed with by the crown, I shall mention one case (5 Bac. Abr. 564), where even after an outlawry (of which purchasers might always have notice as it is a matter of record) a fair purchaser was protected even against the crown. It is Attorney General v. Freeman, Hardr. 101, Salk. 395, Carth. 442. A. was outlawed, and afterwards made a lease of his lands, and afterwards these lands were found amongst others by inquisition, and this lease was pleaded in bar to bind the king, being before the inquisition: the court held that a lease or other estate, made by the party after outlawry and before an inquisition taken, will prevent the king's title, if it be made bona fide upon good consideration: but if it be made in trust for the party only, it will not be a bar; but that no conveyance whatsoever, made after the inquisition, will take away or discharge the king's title.

These cases are strong to shew the general protection afforded by law to fair purchasers, even where the forfeiture is in rem, and the offender is not actually divested of his possession; the necessity of which is directly affirmed in the second description of cases to which I have alluded, to wit: Second. Waived goods. As to waived goods, these belong to the king, and are in him without any office, for the property is in nobody. They may belong in like manner to

the lord of a manor by grant, but not by prescription. The general principle of these cases is conformable to that quoted by Mr. Harper (5 Bac. Abr. 517: 5 Coke, 109) to shew that an offence like that charged against Brown, divested the property out of him, and left it, as it were, in abeyance until suit, which vested the property by relation, from the act of forfeiture. A position of greater comprehension, or which, as a general rule, should embrace the libellant's case, could scarcely be imagined. Waived goods are in the king without office, that is, even without seizure, the purpose of which is answered as to legal title to the king, by the office. 12 Mod. 92. The property is as it were in abeyance, yet this case, so completely applicable in its general principles contains "the strongest possible illustration of the doctrine that a title by forfeiture in the case of a personal chattel, begins from suit, seizure or conviction, and has no relation back (5 Bac. Abr. 517, cites, 21, 2, 4; Ed. 4, 16; 16 Kitchen, 82); for the owner may at any time retake the goods waived, if they are not seized by the king, or the lord of the manor; for the lord's property begins from the seizure." This case is conclusive against Mr. Hollinsworth's argument, that the question is a question of property only, since it proves that property only begins from the seizure, which cannot be lawfully made, to affect an intermediately vested right of a third person.

Third. The relation of executions, at common law, and since the statute, considering this case as one between the government and the claimant, from analogy to cases of the king's precedency in execution. By the statute of 33 Hen. VIII. c. 39, it is enacted, that if any suit be commenced or taken, or any process awarded, for the recovery of any of the king's debts, then the same suit or process shall be preferred before any person or persons. 2 Bac. Abr. 73, 4, etc. And as the king's execution of goods, the same relates to the time of awarding thereof, which is the test of the writ, as it was in the case of a common person at common law. Now to apply the doctrine to the case before the court, and even admitting to this libel the same extent of relation, as is admitted at common law upon the king's execution against personal chattels, and as to real and personal, by the above recited statutes—will it overreach the sale to Capt. Norman? 2 Bac. Abr. 735. It is generally agreed that an execution executed though posterior to the time to which the king's extent relates, bars the king's priority; and in the case of Letchmere v. Thorowgood, 3 Mod. 236 (Com. Dig. C, 12 Z), it was holden, that if the king's extent be sued out posterior to a judgment recovered by a subject, and a writ of execution thereon delivered to the sheriff, though not executed, the king shall be postponed, for the property of the goods is changed by the subject's execution. Here then we advance one step further in restricting the doctrine of relation, as it applies to individual interests. It is presumed that the principle of relation upon executions since the statute, is too familiar to require any reference to adjudged cases.

Fourth. The case of Roberts v. Wetherall, as reported by Salkeld and copied by Bacon, is in these words. "By the act of navigation (12 Car. II. c. 18), certain goods are prohibited to be imported here, under pain of forfeiting them, one part to the king, another to him or them that will inform, seize, or sue for the same." 2 Bac. Abr. 318; Salk. 223. It was adjudged that in this case, that the subject may bring detinue for such goods as the lord may have replevin, for the goods of his villein distrained, for the bringing of the action vests a property in the plaintiff. When this cause was first referred to by Mr. Harper, I considered, as I believe he and the other counsel did, that it came nearer to the case before the court than any which occurred in their researches. On a careful examination of that case, I now think it will be found not to bear on the point now to be decided. In the first place it may be observed, that the case as reported, does not afford any ground to presume, that any other person than he who had unlawfully imported the goods, was interested in the suit; but on the contrary, it is presumable that it was a suit against the original importer. In that case, the question of relation could not have arisen, since it was utterly unimportant to the plaintiff and to the defendant, whether the plaintiff recovered by a title which related to his writ, or to the time of the importation: and further, it is to be remarked, that the question in that case seems to have been only upon the form of action. It was detinue which was founded upon property, and all that that case decides is, that in a case of specific forfeiture, the bringing of the suit vests a property in the plaintiff sufficient to sustain the form of action; for the case to which it is likened and on which the decision rests, is express to shew it does not relate to the interests of others; for, says the book, "in this case the subject may bring detinue for such goods, as the lord may have replevin for the goods of his villein." Which case, as I will shew, goes not only to the form of action, but to the full length of the case. See, at full length, Litt. § 177, with Lord Coke's comment thereon.

So in this case, this ship was liable to forfeiture, and might have been specifically recovered from Brown by the government, or any prosecutor under its laws, before a bona fide alienation by him; but if they have waited until such alienation by him, and a third person has honestly bought and paid for the property sued for, they may be answered in the language of Littleton, "that it shall be adjudged their folly that they did not enter when the offender was in possession." For according to Coke, before such seizure, they had neither jus in re, nor jus

ad. rem, but only a right to sue, which I understand to be the meaning of Lord Coke's possibility above referred to. From all these cases and principles, I infer that the relation of the forfeiture to the time of the offence in cases of treason and felony, especially by self-murder, is peculiar to those cases; that in case of forfeiture of chattels, the relation is only to the time of the conviction.

That the forfeiture to which a party is subjected by statute of a personal chattel, must be construed with relation to the continuance of his ownership in that chattel at the time of conviction, and cannot be prosecuted in rem, to affect a bona fide purchaser for a valuable consideration; and this construction I think not only warranted by the statute on which it is founded, and which speaks of a recovery of the value of the ship, but also by sound legal principles. The value can only be recovered against the actual offender, and never from a bona fide holder: for against the offender, it is the value at the time of the offence, even against a mala fide holder it is only of the thing, be the value of that thing greater or less. If any holder, bona fide, was liable because of his possession, he would not be the less so after he had parted with his possession, but he might be made answerable for the value of the thing in the same manner as if the possession had continued with him; but even where he was not, strictly, a bona fide holder, the remedy in rem is lost if his possession is gone. And it is but just when two remedies are given, to punish an offence, one of which shews a plain intent of the legislature that it shall follow the offender, personally or in his personal interests, so to construe the other remedies, as not to permit them to be extended to involve others, who are wholly innocent, in the same degree of punishment as would attach to the responsible offender.

The argument, that Brown by his false swearing subjected the ship to forfeiture de facto, and that no alienation by him could vest a better title in the vendee than the vende· possessed; and that as he held the ship subject to forfeiture, so any holder under or through him must take it subject to that forfeiture, is certainly a strong one. The general principle is undoubtedly true, that a derivative title cannot be better than the original from which it is derived; but it is only true as a general principle, and the exceptions to its operation are those on which I rely, to warrant my construction of the statute in providing for a recovery of the value of the ship, as well as to shew that in some instances, he who hath no title at all may yet transfer a valid one to personal chattels. Robbery can give no title to goods, and upon conviction there is a judgment of restitution, according to the statute which fixes the remedy against any person in possession at the time of conviction; and this is by the express provision of positive law. Yet the owner of goods stolen, who has prosecuted the thief to conviction, cannot recover the value of his goods from a person who has purchased and sold them again, even with notice of the theft before conviction. 2 Term R. 750. And if the owner of goods loses them by a fraud and not a felony, and afterwards convicts the offender, he is not entitled to restitution or to retain them against a third person, e. g. a pawn-broker, who has fairly acquired a new right of property in them. 5 Term R. 175. If, therefore, he who has no title at all may nevertheless, in some cases, give a legal right, a fortiori, he who holds by a title defeasible only within a limited time (for by the statute of limitations the prosecution, in cases like the present, must be within two years) may transfer a good title to a fair purchaser for a valuable consideration. The language of Blackstone is very emphatic: "The right of proprietors of personal chattels is preserved from being divested, only so far as is consistent with that other necessary policy, that purchasers bona fide, in a fair, open, and regular manner, should not be afterwards put to difficulties by reason of the previous knavery of the seller." 2 Bl. Comm. 449, 450.

The statute provides that in case of a wilfully false oath, in any of the matters required previous to the obtaining the registry, "there shall be a forfeiture of the ship or vessel, together with her tackle, apparel and furniture, in respect to which the same shall have been made, or the value thereof to be recovered," &c. It seems to me the plain and just construction of this statute that the wilful false swearing does not ex directo produce a forfeiture of the ship. The forfeiture is alternative either of the ship, or of the value of the ship; of either at the election of the government, or person suing, but not of both the ship and the value. If the government had recovered the value from Brown, there would have been an end of proceedings against the ship. And if the offence charged against Brown, only produces a specific forfeiture by a subsequent election, the argument is cogent that the relation consequent upon that election, should be restricted by the general rule, that it shall not overreach an antecedent equity, and conclusive that Brown's title was not forfeited de facto, but forfeitable only, and, therefore, within the principles of the cases of waived goods, and villenage before relied on by me, and expressly by Blackstone. 2 Bl. Comm. 421.

Further, the forfeiture is of the ship or the value I have construed this clause somewhat differently from all the counsel: and though this circumstance produces doubts of its correctness, yet as it has weight with me, and minds of less comprehension may sometimes embrace truths which escape superior understanding, I think it my duty to mention it. It is this: That the ship is not liable to forfeiture in the hands of any holder, other than the person false swearing in any case but where such holder would be liable to a suit for the value. The words "that there

shall be a forfeiture of the ship," &c. or of the value thereof, "to be recovered with costs of suit of the person by whom such oath or affirmation shall have been made," plainly shew the intent of the legislature, that the penalty and punishment should attach to the offender only. "To be recovered of the person." both grammatically and legally relate to the object to be recovered, to wit, the ship or the value thereof; and the person from whom, and whom only, the one or the other is to be recovered. The guilt of false swearing forfeits only such interests as the offender possessed; for by the express provision of the sixteenth section of this statute, the rights of an innocent and unoffending owner are exempt from forfeiture. And the words of the statute which connect the recovery with the forfeiture in this case, exclude the idea of any recovery from an innocent holder. Expressio unius est exclusio alterius. If the ship is forfeited by the sole act of the false swearing, then she is equally forfeited, notwithstanding there may have been fifty fair transfers in public market. Every particular sale would be a particular conversion: and any one, or every one, through whose hands she may have passed might be sued for the value of the price; but the statute says that value shall only be recovered of the offender himself. A party having fairly obtained, and fairly lost or departed with his possession, would not in such case be liable for the thing or its value. 3 Com. Dig. 359; 2 Term R. 750. If not liable when his possession has honestly ceased neither can he be made so when it honestly continues since his own act cannot vary his legal responsibility.

Does reason or policy require a different construction? The government prohibits an act under a penalty against the party offending. They say we for this forfeit the thing in respect to which you have sworn falsely, if it continues in existence and is yours; but if lost or destroyed, or other persons innocently acquire new rights in that thing, your guilt shall still be punished; if annihilated—if sold—pay the value; if you have fraudulently impaired the thing, still pay the value; the one or the other shall be recovered of you, the guilty party. But this prohibition contains no threat of punishment against an innocent holder. No inconvenience arises from this construction. A purchaser can only look to the face of the documents, to the records of title which the law requires for this species of property. The knowledge of the cause of forfeiture rests generally in the bosom of the offender; and the law can never require of a purchaser to examine into the secrets of the heart.

It is more the interest and policy of government to increase its wealth and strength by the employment of ships in trade and commerce, than to augment its revenue by forfeitures. It therefore wisely protects the interests of fair ship-holders, while it carefully provides for the punishment of fraudu-

lent contravention of its laws. Protection is not by this construction afforded to guilt or fraud, it is only a shield for innocence. The remedy remains, as it ought, against him who committed the offence. Government cannot be deprived of its forfeiture by any fraudulent alienation. Such a sale would be void. Jones v. Ashurt, Skin. 357. The possession is legally, and to effectuate the statutory provision still in the vender. Twyne's Case, 3 Coke, 80b; 2 Bl. Comm. 421. Indeed all the reasoning on this subject is contained in two axioms of the civil law, to which this court may be allowed to refer. "In rem actione tenetur qui dolo desiit possidere." Zouch, Elem. 197. "Et aliquando quod fieri non debet factum valet—primum et bonum quod sit bona fide, improbatur autem quod sit mala fide vel dolo." Id. 41.

If a contrary construction prevails, government may have greater security for a few specific penalties; but it is at the expense of the interest of commerce, and the security of all ship-holders. Libel dismissed.

### NOTE.

The United States of America, Maryland District,—ss.: To the Honourable James Winchester, Judge of the District Court of the United States of America for Maryland District: In the name and on the behalf of the United States of America, Zebulon Hollingsworth, attorney of the United States for Maryland district, cometh here into court in his proper person, and giveth the court here to understand and be informed, that heretofore, to wit, on the twenty-fifth day of November, in the year of our Lord one thousand eight hundred and one, at the port of Baltimore, in Maryland district, a certain Aquila Brown, a citizen of the United States of America, and of the city of Baltimore, being a part owner of a certain ship, called the Anthony Mangin, appeared before Robert Purviance, collector of the customs for the United States of America at the port of Baltimore, in Maryland district, he the said Robert Purviance being then and there the officer authorized by law to make registry of the said ship: and the said Aquila Brown then and there, to wit, on the day and year aforesaid, at the district aforesaid, made oath before the said Robert Purviance, on the Holy Evangelists of Almighty God, that he the said Aquila Brown was the sole owner of the said ship called the Anthony Mangin: the said oath being then and there made by the said Aquila Brown, and so as aforesaid administered by the said Robert Purviance collector as aforesaid, in order to the registry of the said ship; and with the intent to obtain, and for the purpose of obtaining, a register for the said ship, pursuant to the statute of the United States in such case made and provided. And the said attorney in the name and on behalf of the said United States, doth aver, and in fact say, that the said fact in the said oath alleged, that the said Aquila Brown was the sole owner of the said ship, called the Anthony Mangin, within the knowledge of the said Aquila Brown so swearing as aforesaid was not true, to wit, on the day and year aforesaid at the district aforesaid: but the said attorney in the name and on the behalf of the said United States, doth in fact aver and say, that the said fact so alleged in the said oath was false and untrue; and that within the knowledge of the said Aquila Brown, a certain Harman Henry Hackeman, an alien and not a citizen of the United States of America, was part owner of the said ship called the Anthony Mangin, at the time of making the said oath by the said Aquila Brown as aforesaid, with the

intent and for the purpose aforesaid, and in order to the registry of the said ship to wit, on the day and year aforesaid. at the district aforesaid; for which causes the said Robert Purviance collector as aforesaid. hath caused the said ship, her tackle, apparel and furniture to be seized as by law forfeited. Wherefore the said attorney prayeth the advice of the court here in the premises, and that due process of law may issue against the said ship, her tackle, apparel and furniture, and that due proclamation with monition may issue in this behalf to cite and admonish all persons to be and appear at a'day and place by your honor to be named, to shew cause if any they have, why the said ship called the Anthony Mangin, her tackle, apparel and furniture should not be condemned and sold, and the money arising from said sale to be distributed according to law. And that she be so condemned and sold, and the said money so distributed prayeth Zeb. Hollingsworth, Attorney of the United States for the Maryland District.